IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIRK FILLMAN,                          )
                                       )
            Plaintiff,                 )    Civ. No.  05-6346-TC
                                       )
        vs.                            )
                                       )
                                       )    OPINION AND ORDER
                                       )
OFFICEMAX, INCORPORATED,               )
a Corporation of Delaware, fka         )
BOISE CASCADE CORPORATION,             )
A Delaware corporation, and            )
BOISE CASCADE, L.L.C., a               )
limited liability company,             )
                                       )
            Defendants.                )
_____)

COFFIN, Magistrate Judge.

    Before the court is Boise Cascade L.L.C.'s Motion for
Summary Judgment (#35) and Supplemental Motion for Summary
Judgment (#127), and OfficeMax Incorporated's Motion for Summary
Judgment (#40). For the reasons that follow, summary judgment is
granted in defendants' favor and this action is dismissed.

                        BACKGROUND

    The record discloses the following facts.  OfficeMax
Incorporated (OfficeMax) hired plaintiff in 1991.  Sprauer Decl.

1 Opinion and Order

¶ 2.    A member of the Association of Western Pulp and Paper Workers Union, plaintiff's employment terms and opportunities were governed by a collective bargaining agreement (CBA). The CBA set forth rules allowing employees to bid on available positions based on seniority and experience according to an employment "ladder." Sprauer Decl. ¶ 3.

Plaintiff occupied a number of ladder positions. By 2002, he attained the position of #1 Willsheeter First Assistant. Fillman 29, 242. Plaintiff opted to work as a sample and label clerk from March to September of 2003 and then returned to the #1 Willsheeter First Assistant position. Fillman 66-67, 69.

Plaintiff also occasionally served as a temporary relief supervisor to oversee particular projects or to supervise the plant when no other supervisor was available. Fillman 80, 209, 241. Plaintiff took on the supervision duties while maintaining his regular "ladder" job; under the CBA, there is no permanently designated relief supervisor position. Sprauer 36, 50; Fillman 271.

On May 31, 2002, plaintiff suffered an injury to his right shoulder due to a car accident. Fillman 29, 33, 42. He requested time off and was returned to work on August 19, 2002. At that time, he returned to work but was restricted to "light duty" tasks, defined as work "performed at a desk and/or waist level. No heavy lifting." Boise Cascade Ex. 4. OfficeMax provided plaintiff work that met those restrictions by assigning him the role of United Way Loaned Executive and relief supervisor from August through December of 2002. Fillman 47, 97.

In January, 2003, plaintiff was granted leave to undergo

2 Opinion and Order

surgery on his injured shoulder.  On January 30, he was released to return to work with restrictions against lifting and overhead reaching.  Fillman 48, 64, 66; Nelson 50.  After his return, Fillman chose an open ladder job as a sample and label clerk, which began in March 2003.  In June 2003, Fillman was released to regular duty with no medical restrictions.  Fillman 73.  He returned to the #1 Willsheeter First Assistant position in December 2003.

In January 2004, plaintiff underwent a second surgery on his right shoulder, for which he was granted leave.  Fillman 71, 72, 75.

During plaintiff's leave, OfficeMax posted a new management position of Finishing Shift Supervisor.  Fillman 79.  OfficeMax's Human Resources Coordinator, Therese Sprauer, gave notice of the opening and plaintiff applied.  Fillman 241, Sprauer 76.  Fillman interviewed for the job, along with six other candidates.  Sprauer 78.  The candidates were scored based on their responses to the interview questions.  Sprauer 84.  The two top scorers were Kristen Hurst and Joe Rodriguez.  Hurst was ultimately selected because she had superior supervisory experience, even though Rodriguez had the higher interview score.  Sprauer 81, 84-86.  Plaintiff ranked fourth and was not selected largely because he provided incomplete responses and interviewed poorly.  Sprauer 81, 84.  Plaintiff requested a meeting to discuss why he was not selected; there, Sprauer explained that he did not interview well and gave the impression that he was entitled to the position.  Fillman 103, Sprauer 87, 89.

In February 2004, plaintiff was released to light duty work

3 Opinion and Order

with restrictions against lifting with his right arm.   Fillman
79, 106.   OfficeMax did not have available work that met
plaintiff's restrictions; in March and April of 2004, plaintiff
was trained in insurance sales and began selling insurance on his
own time. Fillman 94, 115, 122.

In May 2004, OfficeMax offered plaintiff light duty work,
which plaintiff accepted for a two-week period.   Plaintiff did
not return to the plant to work after June 2004.   Fillman 123.

In August 2004, Sprauer wrote to plaintiff requesting an
update on his medical restrictions.   Sprauer Decl. ¶ 10.
Plaintiff reported that he believed his restrictions would be
permanent.   Fillman 125.   In September 2004, plaintiff's
physician determined that his condition was stationary and his
injuries permanent. Fillman 150.   OfficeMax referred plaintiff
for an independent medical exam in order to determine whether
plaintiff's restrictions were permanent and whether he would be
able to return to his job as #1 Willsheeter First Assistant.
Fillman 126, 188-89.   On October 28, 2004, the IME physician
determined that plaintiff's permanent restrictions limited him
from lifting more than 25 pounds and repetitive overhead
reaching.   Fillman 175-76.   Plaintiff nonetheless retained his
seniority, the #1 Willsheeter First Assistant position, and the
attendant benefits.   Sprauer Decl. ¶ 12.

The   following   day,   October   29,   OfficeMax   sold   its
manufacturing and timberland assets, which included the plant at
which plaintiff worked, to Boise Cascade, L.L.C (Boise Cascade).
On that day, all OfficeMax employees were terminated and then
immediately employed by Boise Cascade.   Fillman 155; Sprauer

4 Opinion and Order

Decl. ¶ 11.  Boise Cascade hired Fillman as #1 Willsheeter First Assistant and met with him on November 1 concerning his medical restrictions.  Fillman 181, 196; Sprauer 104, 105.  There, all present (including plaintiff) agreed that plaintiff's medical restrictions prevented him from performing the essential functions of the #1 Willsheeter First Assistant position, and no available positions met plaintiff's restrictions.  Fillman 181, 196, 243; Sprauer 104.  Boise Cascade continued plaintiff's medical leave pursuant to the CBA and agreed to monitor open positions plaintiff might be able to fill.  Sprauer 106.

Boise Cascade did so for the next 18 months.  In February 2006, Boise Cascade notified plaintiff of an administrative technician position that met plaintiff's medical restrictions.  Plaintiff chose not to apply.  Fillman 182-183, 244-45.

In June 2006, plaintiff had been absent from the plant for two years.  His medical condition had not changed, and there were no available positions that met his restrictions.  Fillman 1/8/07, 282-83.  Under the terms of the CBA, Boise Cascade was no longer required to maintain plaintiff's seniority and benefits.  Sprauer 125-26, Ex. 61; Fillman 200-01, OfficeMax Ex. 6; 280, OfficeMax Ex. 7.  Accordingly, Boise Cascade terminated plaintiff's employment.  Sprauer Decl ¶ 2; Sprauer 125-26; Fillman 284-85.

Plaintiff filed this action against OfficeMax and Boise Cascade in November 2005.  He alleges that both defendants discriminated against him on the basis of a disability, in violation of 42 U.S.C. § 12112 and Or. Rev. Stat. § 659A.112; that both violated state and federal family leave law, 29 U.S.C.

5 Opinion and Order

§§ 2614-2615 and Or. Rev. Stat. § 659A.153; and that both are liable for wrongful discharge under Oregon tort law. Plaintiff also brings a number of claims against OfficeMax only: discrimination on the basis of sex and race, in violation of 42 U.S.C. § 2000e; intentional infliction of emotional distress; and, reckless infliction of emotional distress. Both defendants now move for summary judgment on all claims. For the following reasons, I grant defendants' motions.

## STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact is resolved against the moving party, Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976), and any inferences drawn from the underlying facts are viewed in the light most favorable to the nonmoving party. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

6 Opinion and Order

which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  Id. at 323-24.

## ANALYSIS

### 42 U.S.C. § 12112 (ADA) and Or. Rev. Stat. § 659.112A Claims

I turn first to plaintiff's state and federal claims of disability discrimination.  In order to warrant protection under either standard, plaintiff must demonstrate that he suffers from a physical or mental impairment that substantially limits one or more of his major life activities, that he has a record of such impairment, or that his employer regarded him as having such an impairment.  Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1113 (9th Cir. 2000) (en banc), vacated on other grounds, 535 U.S. 391 (2002); ORS 659A.100(1)(a).[1]  "'Major life activities' means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(I).

Plaintiff first asserts that he suffers from an actual disability, that is, an impairment to his right shoulder that

---

[1] Oregon disability law is construed to the extent possible to follow similar ADA provisions.  Evans v. Multnomah County Sheriff's Office, 57 P.3d 211 (Or. 2002).

7 Opinion and Order

substantially limits certain activities. He contends that his shoulder injury has weakened his softball pitching and made vacuuming painful and starting a lawnmower more difficult. Fillman 143-47. He further contends that the shoulder injury substantially limits his ability to lift, because he cannot lift more than 25 pounds, and his ability to reach. Fillman 139, Boise Cascade Ex. G, 146, 153-155.

Those effects, which defendants do not contest, do not rise to the level of impairment that governing law recognizes as "substantial."[2]    An impairment "substantially limits" an individual who becomes, as a result of the impairment,

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); see also Or. Rev. Stat. § 659A.100(2)(D)(B) (describing substantially similar standard). Factors used in considering whether a limitation is "substantial" include:

> (i) The nature and severity of the impairment;

> (ii) The duration or expected duration of the impairment; and

> (iii) The permanent or long term impact, or the expected permanent or long term impact of or

---

[2]Because I determine that plaintiff does not suffer any substantial limitation, I need not consider whether any of the activities at issue qualify as "major life activities."

8 Opinion and Order

resulting from the impairment.

29 C.F.R. § 1630.2(j)(2); Or. Admin. R. 839-006-0212. When an impairment renders activities more painful or difficult but does not prevent the activity outright, the fact of a dimunition in ability will not, in itself, constitute a substantial limitation. Thornton v. McClatchy Newspapers, Inc., 292 F.3d 1045, 1046 (9th Cir. 2002).

Here, plaintiff testified that, despite his shoulder injury, he is still able to throw and coach softball, though his pitch is weak and causes pain. Fillman 145. Moreover, vacuuming with his right arm causes pain, he is able to run the vacuum with his left arm, albeit awkwardly. Fillman 147. In view of the considerations set forth in the governing regulations, these limitations, and the fact that he has a "hard time" starting the lawnmower, are minor and therefore do not constitute significant restrictions on his ability to complete manual tasks.

Plaintiff further argues that the 25-pound lifting restriction constitutes a substantial limitation on the activities of working and lifting.[3]  A number of courts have determined that a restriction against lifting items heavier than 25 pounds does not impose a significant restriction on the "condition, manner, or duration" of lifting in comparison to the abilities of the "average

_____

[3] Lifting is identified as a major life function in the state regulation, Or. Admin. R. 839-006-0205(6)(a), but not in the federal regulations.  "Federal cases generally consider lifting restrictions as they impact a plaintiff's ability to perform major life functions such as self-care and work." Galenbeck v. Newman & Newman, Inc., No. 02-6278-HO, WL 1088289 at *5 (D. Or., May 14, 2004).

person in the general population." 29 C.F.R. § 1630.2(j)(1)(i).
In the similar case of Thompson v. Holy Family Hosp., 121 F.3d 537,
539 (9th Cir. 1997), the plaintiff was released to work with a
restriction against lifting items heavier than 25 pounds. Standing
alone, that restriction could not demonstrate a substantial
limitation on the activities of working or lifting, and summary
judgment in favor of defendant on plaintiff's disability claim was
upheld. See also Williams v. Channel Master Satellite Systems,
Inc., 101 F.3d 346, 349 (4th Cir. 1996); Aucutt v. Six Flags Over
Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996) (holding
same). Likewise, I cannot hold that plaintiff has demonstrated a
substantial limitation on the major life activity of lifting.

In order to demonstrate a substantial limitation on the major
life activity of "working," plaintiff must demonstrate that he is
restricted in his ability to perform either a single class of jobs,
or a broad range of various types of employment as compared to an
average person having comparable training, skills, and abilities.
29 C.F.R. § 1630.2(j)(3)(I); Or. Admin. R. 839-006-0205(6)(b). The
court may consider factors such as

> (A) [t]he geographical area to which the individual
> has reasonable access;
>
> (B) [t]he job from which the individual has been
> disqualified because of an impairment, and the
> number and types of jobs utilizing similar training,
> knowledge, skills or abilities, within that
> geographical area, from which the individual is also
> disqualified because of the impairment (class of
> jobs); and/or
>
> (C) [t]he job from which the individual has been
> disqualified because of an impairment, and the
> number and types of other jobs not utilizing similar
> training, knowledge, skills or abilities, within
> that geographical area, from which the individual is
> also disqualified because of the impairment (broad

range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). Plaintiff has not put forth any evidence to demonstrate that his is prevented from performing work that would categorically qualify him as disabled. Plaintiff bears that burden, once defendants have pointed out the absence of evidence in the record. Celotex Corp., 477 U.S. at 323. He argues that because he is unable to perform the essential duties of the #1 Willsheeter First Assistant position, he is disqualified from a broad class of manufacturing and production jobs. However, plaintiff's own record of employment at OfficeMax indicates that he can contribute to those fields as a supervisor and in light duty capacities. In the absence of any evidence in the record to the contrary, I cannot hold that plaintiff's restriction against lifting items heavier than 25 pounds and repetitive reaching with one arm constitutes a substantial limitation on the major life activity of working.

Finally, plaintiff asserts that his injury substantially limits the major life activity of reaching, see Or. Admin. R. 839-006-0205(6)(a), presumably because he is restricted from work involving repeated overhead reaching with his right arm. However, plaintiff has testified that he is able to reach overhead occasionally, Fillman, 146, and sufficiently reach to throw a softball the distance from a mound to the plate, but "not without a bounce." Fillman 145. The record supports a diminution in his ability to reach, but not a substantial limitation. In sum, the record does not permit a determination that plaintiff suffers an

1    actual disability under the relevant standards.[4]

2        Plaintiff argues in the alternative that he has a record of an

3    impairment that substantially limits his major life activities.

4    Plaintiff bases this argument on employee records demonstrating (1)

5    the lifting and reaching restrictions previously discussed and (2)

6    leaves of absence taken during his convalescence from his car

7

8        [4]Plaintiff argues that, rather than limited to a 25-pound
9    restriction, he is instead limited to lifting items heavier than
     ten pounds on a repeated basis.  The record does not clearly
10   support that contention; plaintiff testified that his restriction
     limits him to lifting more than 25 pounds, Fillman 154, 175, 176.
11   Plaintiff's treating physician and the independent medical examiner
     shared that conclusion.  Fillman 176.  However, plaintiff asserts
12   that he is limited to lifting ten pounds, based on a statement made
     by the independent medical examiner, who made the assessment based
13   on "virtually no medical records," but instead on a description of
     plaintiff's condition in a letter from his attorney.  Plaintiff's
14   Counsel Decl. Ex. 24.  The independent medical examiner later
     finalized his assessment, after receiving plaintiff's medical
15   records, and concluded that plaintiff "would not be able to do
     repetitive reaching, overhead work or lifting more than 25 lbs."
16   Plaintiff's Counsel Decl. Ex. 25.
         Even if plaintiff were, in fact, restricted to lifting less
17   than ten pounds, that restriction, along with repetitive reaching
     limitations, would not render him disabled under the governing
18   regulations.  In comparison to the level of ability in the general
     population, the restriction would not, as a matter of law,
19   constitute a substantial limitation on the major life activities of
     lifting, see, e.g., Marinelli v. City of Erie, P.A., 216 F.3d 354,
20   364 (4th Cir. 2000), or working, see Mays v. Principi, 301 F.3d
     866, 870-71 (7th Cir. 2002) (doubting "whether lifting more than 10
21   pounds is" a restriction on any major life activity).
         In any case, there is no indication that the ten-pound lifting
22   restriction was permanent.  See Stoltman v. Federal Express Corp.,
     Civ. No 01-60-A, WL 32783976, *5 (D. Or., May 20, 2002)
23   (restriction against lifting more than 12 pounds and nonpermanent
     inability to lift more than ten pounds did not constitute a
24   substantial limitation on any major life activity).
         Notably, the single case that plaintiff cites in order to
25   substantiate the contention that a ten-pound restriction on lifting
     creates a genuine issue of material fact concerning whether an
26   individual suffers a substantial limitation on a major life
     activity, Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170 (10th
27   Cir. 1996), is factually remote from plaintiff's situation.  In
     Lowe, the plaintiff also suffered from multiple sclerosis and was
28   restricted against lifting items heavier than fifteen pounds on a
     repeated basis.  87 F.3d at 1174.

     12 Opinion and Order

1    accident and two shoulder surgeries.  Those items cannot constitute
2    a "record" of a substantial limitation to a major life activity
3    under federal or state law.

4        In order to qualify, the record must show an impairment that
5    would establish an "actual disability" under the standard discussed
6    above.  Coons v. Dept. of the Treas., 383 F.3d 879, 886 (9th Cir.
7    2004); Walz v. Marquis Corp., No. CV-03-1468-ST, WL 758253, at *6)
8    (D. Or. 2005).  Because plaintiff's lifting and reaching
9    restrictions cannot substantiate an actual disability, records of
10   those restrictions cannot serve as records of a substantial
11   limitation to a major life activity.  Moreover, the records
12   demonstrating plaintiff's leaves of absence demonstrate only
13   temporary periods of recovery and not a restriction whose
14   "condition, manner or duration" imposes a significant limitation on
15   a major life activity.  Standing alone, they cannot create a record
16   of a disability.

17       Plaintiff asserts, as another alternative argument, that he
18   qualifies as "disabled" under federal and state standards because
19   OfficeMax and Boise Cascade regarded him as being disabled.  In
20   order to be "regarded" as disabled, plaintiff must demonstrate that
21   he

22        (1) Has a physical or mental impairment that does
23        not substantially limit major life activities but
          is treated by a covered entity as constituting such
24        limitation;

25        (2) Has a physical or mental impairment that
26        substantially limits major life activities only as
          a result of the attitudes of others toward such
27        impairment; or

28        (3) . . . is treated by a covered entity as having
          a substantially limiting impairment.

     13 Opinion and Order

29 C.F.R. § 1630.2(l). Plaintiff argues that OfficeMax's action in directing him to undergo an independent medical examination and both employers' offers of employment that met his medical restrictions supports the conclusion that they regarded him as disabled. Plaintiff's argument is unavailing.

Plaintiff has not demonstrated the existence of an issue of fact that would show that either employer treated him as having a "substantial[] limit[ation on a] major life activity" or a "substantially limiting impairment" despite the fact that he had no such limitation. See 29 C.F.R. § 1630.2(l), (3). Plaintiff points to the fact that his employers knew that he suffered effects from his shoulder injury, but that knowledge alone does not indicate that either employer perceived plaintiff to have a substantial limitation on any life activity. See Thompson, 121 F.3d at 541 (employer's knowledge that employee could not lift more than 25 pounds did not demonstrate that employer regarded her as disabled).

Moreover, by directing plaintiff to undergo an independent medical evaluation, OfficeMax demonstrated only that it required confirmation concerning plaintiff's claims about the nature and duration of his limitations, not that already it concluded plaintiff to be disabled. See Tice v. Centre Area Transp. Auth., 247 F.3d 506, 515 (3d Cir. 2001) (holding that directing employee to undergo exam can indicate employer's doubts about an employee's ability to perform a job, but cannot be bootstrapped to demonstrate conclusion that employee is regarded as disabled). OfficeMax, and then Boise Cascade, regarded plaintiff as capable of working a

14 Opinion and Order

number of jobs notwithstanding his injury and encouraged him to apply when opportunities arose.  Nothing in the record raises a genuine issue of material fact that would support the conclusion that either employer regarded plaintiff as disabled.

In sum, plaintiff has failed to demonstrate that he qualifies as "disabled" under federal or state law; as such he is ineligible for any relief on the claim of discrimination on the basis of disability.  Summary judgment in defendants' favor on plaintiff's 42 U.S.C. § 12112 and Or. Rev. Stat. § 659.112A claims is warranted.

FMLA and OFLA Claims

(1) FMLA Interference

29 U.S.C. § 2615(a)(1) prohibits an employer from interfering with, restraining or denying an employee's rights under the FMLA. "Interference" includes refusing to authorize FMLA leave, discouraging an employee from using FMLA leave, and "manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b).  The Ninth Circuit has held that an employee who alleges that he "suffered negative consequences . . . simply because he has used FMLA leave" or was deterred from participating in protected activities states a claim for "interference." Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001).

Plaintiff does not dispute that he was granted all requested leave.  Rather, he asserts that OfficeMax interfered with his ability to take FMLA leave by failing to restore him to the #1 Willsheeter First Assistant position after he returned from his

15 Opinion and Order

three periods of FMLA leave.[5]  That contention cannot support an
FMLA interference claim.

Fillman does not dispute, however, that after returning from
each FMLA leave, he was unable to perform the essential functions
of that position.  Fillman 45, 64, 79.  "An employee who is unable
to perform the essential functions of the position following the
leave period has 'no right to restoration to another position under
the FMLA.'"  Farrell v. Tri-Metropolitan Transp. Dist., No. CV
04-296-PA, WL 1371656, *2, (D. Or., May 15, 2006) (quoting 29
C.F.R. § 825.214(b)).

(2) FMLA Retaliation

Plaintiff further contends that OfficeMax and Boise Cascade
retaliated against him for taking FMLA leave.  Specifically, he
argues that both defendants retaliated against him by failing to
restore him to the #1 Willsheeter First Assistant position after he
returned from his FMLA leave, that OfficeMax retaliated against
plaintiff by failing to provide him with "safety points," and that
Boise Cascade retaliated by eventually terminating him.  Again,

_____

[5] Plaintiff also seems to suggest that OfficeMax took adverse
action against him by not appointing him as relief supervisor after
taking FMLA leave.  The role of relief supervisor is not a ladder
position; rather, it is a temporary role assigned on a nonpermanent
basis.  Neither party argues that, under the CBA, prior tenure as a
relief supervisor would entitle an employee to ongoing or future
assignment to that role.  In any case, plaintiff has not
demonstrated the existence of a genuine issue of material fact that
would indicate that the decision not to assign the relief
supervisor role to him was made in response to his FMLA requests.

16 Opinion and Order

1    plaintiff cannot withstand summary judgment.[6]

2        First, as explained above, plaintiff had no right to

3    restoration to the willsheeter position. No fact in the record

4    supports the inference that defendants' "failure" to restore him

5    was a consequence of plaintiff's FMLA leave.

6        Second, the deposition excerpt that plaintiff cites to support

7    his contention that he was deprived of "safety points" because of

8    his leave status does not substantiate his argument. Rather, the

9    deponent acknowledged that the Recognition Team, apparently a

10   committee that encouraged praiseworthy employee practices,

11   discussed disallowing "safety points" to employees who underwent

12   any sort of extended leave. Pltf's Ex. 6 at 81-83. There is no

13   indication that plaintiff was disallowed safety points or that, if

14   he was, such alleged action was taken in response to his FMLA leave

15   requests.

16       Similarly, the record does not support plaintiff's third

17   contention. OfficeMax terminated plaintiff when it terminated

18   every other individual in its employ, upon its sale to Boise

19

20       [6]The Ninth Circuit Court of Appeals has left open the issue of
21   whether McDonnell Douglas analysis applies in an anti-retaliation
     action under § 2615(a)(2). Xin Liu v. Amway Corp., 347 F.3d 1125,
22   1135, 1136 n. 10 (9th Cir. 2003). In the absence of any mandatory
     authority requiring the court to apply the burden-shifting analysis
23   of McDonnell Douglas, I proceed by inquiring whether the record
     discloses a genuine issue of material fact concerning whether
24   plaintiff was terminated due to his FMLA requests. But see Price
     v. Multnomah County, 132 F. Supp. 2d 1290, 1296 (D. Or. 2001)
25   (applying burden-shifting analysis in FMLA retaliation claim).
     Even if the burden-shifting analysis applies, however, plaintiff's
26   claim would not withstand summary judgment because defendants have
     put forth legitimate, nondiscriminatory reasons for not restoring
27   plaintiff to the #1 Willsheeter First Assistant position and for
     eventually terminating him, and plaintiff has not adduced any fact
28   in the record to indicate that the explanations for those actions
     were pretextual.

Cascade; there is no fact in the record to support the inference that the termination was designed to retaliate against plaintiff for having taken FMLA leave months before.  Boise Cascade then hired plaintiff and fulfilled its duties under the CBA.  No fact in the record supports the inference that Boise Cascade terminated plaintiff on the basis of his requests for FMLA leave two years prior from Boise Cascade's predecessor, OfficeMax.  Summary judgment on plaintiff's FMLA claims is warranted.

(3) OFLA Claims

Plaintiff bases his OFLA claims on the same reasoning used to support his FMLA interference and retaliation claims.  Plaintiff's OFLA claims cannot withstand summary judgment.  Unlike FMLA, OFLA does not provide a cause of action for "interference" with an employee's ability to request OFLA leave or for retaliation against an employee for having made an OFLA request.[7]  Rather, plaintiff's claim is limited to an alleged denial of leave under Or. Rev. Stat.

_____

[7] Like the court in Alexander v. Eye Health Northwest, P.C., No. CV-05-1632-HU, WL 2850469, *5 n. 3 (D. Or., Oct. 3, 2006), I acknowledge that the Oregon Court of Appeals recognized the existence of an OFLA retaliation claim.  Yeager v. Providence Health System Oregon, 96 P.3d 862 (Or. App), rev. denied, 103 P.3d 641 (Or. 2004), I reject the analysis in Yeager for the same reasons cited in Alexander, viz., "on the ground that a retaliation cause of action is not made an unlawful practice in the OFLA statutes themselves, so that a BOLI regulation purporting to create a retaliation cause of action under OFLA, Or. Admin. R. § 839-009-0320(3), is beyond the authority delegated to BOLI by the legislature."  Alexander, WL 2850469, *5 n. 3; see also Vestar Dav. II, L.L.C., v. General Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001) (federal courts are required to follow the highest state court on questions of state law, but not intermediate courts).  Even if an OFLA retaliation or interference claim were available to plaintiff, it would fail on the merits for the reasons  described in the discussion of plaintiff's FMLA interference and retaliation claims.

§ 659A.183.

As explained above, there is no dispute that plaintiff was granted all leave requested. For this reason, no relief is available to plaintiff under OFLA, and defendants' motions for summary judgment on these claims are granted.

Title VII Claims (against OfficeMax only)

Plaintiff alleges that he suffered disparate treatment on the basis of his sex and race in violation of Title VII. He attempts to substantiate this claims by contending that OfficeMax denied him a promotion in February 2004 and constructively discharged him in May 2004 for discriminatory reasons.

On the failure to promote claim, plaintiff is required to make a prima facie showing that (1) he is a member of a protected class; (2) that he applied for an open job for which he was qualified; (3) he was rejected; and, (4) the job was filled by an individual not belonging to a protected class. McGinest v. GTE Service Corp., 360 F.3d 1103, 1122-23 (9th Cir. 2004). "Title VII applies to all racial groups, whether majority or minority," and therefore protects Caucasian employees from discrimination. Moran v. Selig, 447 F.3d 748, 753 (9th Cir. 2006) (citing McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 278-80 (1976)).

Under the McDonnell Douglas burden-shifting analysis, OfficeMax may rebut the prima facie case by providing evidence that it had a legitimate, nondiscriminatory reason for promoting a member who is not a member of a protected class. McGinest, 360 F.3d at 1123. If OfficeMax meets that burden, in order to withstand summary judgment, plaintiff must then present evidence

19 Opinion and Order

demonstrating that OfficeMax's reason for deciding not to promote him was pretextual. _Id._

Here, plaintiff, a Caucasian male, applied for a position filled by a woman, Kristen Hurst. Because he eventually placed fourth in the rankings of candidates for the position, I assume that he had qualifications sufficient to carry his burden on the prima facie case.

OfficeMax, however, has rebutted plaintiff by putting forth evidence of legitimate, nondiscriminatory reasons for hiring a female candidate. In a uniform process, in which candidates were asked similar questions and scored individually, Hurst scored higher than plaintiff. Although she did not score as high on the interview questions as another male candidate, Rodriguez, Hurst was ultimately selected because she had a record of superior management experience in comparison to Rodriguez.

Plaintiff has failed to put forth any evidence that OfficeMax's stated reasons for deciding not to promote him serve only as pretext to hide a discriminatory intent. Plaintiff argues that the fact that Rodriguez, who scored higher on the interview component of the process, was also not ultimately selected for the job. In plaintiff's view, that information demonstrates an alleged bias against male candidates. However, plaintiff's analysis does not account for the fact that the ultimate decision rested on both interview performance and supervisory experience. Plaintiff cannot rest his allegation of bias on a selective portrayal of the race-neutral and gender-neutral considerations that comprised the appointment criteria. Plaintiff also seems to assert that he suffered disparate treatment because the second most qualified

20 Opinion and Order

candidate, a Hispanic male, received advice after the interview about how he could improve his skills. However, plaintiff, too, received assistance after the interview process. At plaintiff's request, Sprauer, an interview committee member and OfficeMax''s Human Resources Coordinator, met with plaintiff, reviewed the decision-making process and explained the deficiencies that the committee had identified in plaintiff's, experience, interview performance, and responses to the committee's questions. No fact in the record supports plaintiff's allegations.

Similarly, plaintiff's claim that he was "constructively discharged" in May 2004 on the basis of race and sex cannot withstand summary judgment. Apparently, plaintiff's "constructive discharge" allegation is based on the supposition that OfficeMax failed to continue to provide light duty work for him on the basis of his sex or race, resulting in his inability to continue to work. Plaintiff has not clarified the basis of the claim in his briefing. As an initial matter, the record indicates that OfficeMax provided plaintiff with work that met his restrictions during that month, as it had in 2002 and 2003. Plaintiff has not demonstrated that any other light duty opportunities became available at OfficeMax after May 2004. OfficeMax maintained his job, benefits, and seniority until the sale of the facility to Boise Cascade. Plaintiff has not alleged any fact concerning work conditions or employer behavior that would have made the workplace intolerable to him; rather, plaintiff's inability to work was caused solely by his shoulder injury. He was not constructively discharged, nor was he denied light duty assignments on the basis of his sex or race.

In sum, plaintiff has failed to demonstrate the existence of

a genuine issue of material fact that would support his sex and race discrimination claims. Summary judgment in OfficeMax's favor is appropriate.

Wrongful Discharge

Plaintiff further alleges that he was wrongfully terminated, apparently by Boise Cascade, "because he requested that disability discrimination not occur in the workplace." Second Amended Complaint, 18.

A wrongful discharge claim does not provide plaintiff an avenue of relief in this action. As an initial matter, OfficeMax was not obliged to provide work that accommodated plaintiff's medical restrictions under state or federal law. See Bass v. The County of Butte, 197 Fed. Appx. 655, 657 (9th Cir. 2006) (employer has no duty to accommodate employee who is not a "qualified individual with a disability" under the ADA). Nonetheless, its agent apprised plaintiff of opportunities for which he would be eligible to apply notwithstanding his restrictions. Plaintiff opted to take advantage of some of those opportunities.

He alleges that, once his temporary position ended in June 2004, he was constructively discharged, apparently because no subsequent positions opened up prior to the sale of OfficeMax to Boise Cascade. As noted above, OfficeMax had no obligation to accommodate plaintiff. The record simply does not support the conclusion that OfficeMax created intolerable or infeasible working conditions that would amount to constructive discharge. See McGanty v. Stadenraus, 901 P.2d 841, 853-54 (Or. 1995) (describing elements of constructive discharge). Because plaintiff was not

22 Opinion and Order

constructively discharged, I turn to plaintiff's alternative claim that he was terminated on the basis of disability discrimination.

Oregon law understands wrongful discharge as "an interstitial tort, designed to fill a remedial gap where a discharge in violation of public policy would be left unvindicated." Dunwoody v. Handskill Corp., 60 P.3d 1135, 1139 (Or. App. 2003). Accordingly, a wrongful discharge claim is preempted by the availability of statutory remedies where the legislature has provided (1) a remedy "adequate to protect both the interests of society . . . and the interests of employees," Brown v. Transcon Lines, 588 P.2d 1087, 1095 (Or. 1978), (2) which the legislature intended "to abrogate or supersede any common law remedy for damages," Holien v. Sears, Roebuck and Co., 689 P.2d 1292, 1300 (Or. 1984). Where "the statute is silent with respect to the legislature's intent . . . in the absence of an explicit statement, the existence of adequate remedies can be seen implicitly to establish exclusivity." Olsen v. Deschutes County, 127 P.3d 655, 661 (Or. App.), rev. denied, 136 P.3d 1123 (Or. 2006).

Here, the legislature preempted a wrongful discharge claim based on disability discrimination when it enacted a statutory scheme that provides remedies for victims of unlawful employment practices, which includes disability discrimination. Or. Rev. Stat. §§ 659A.109; 659A.885. Employees who invoke the right to reasonable accommodations are protected from retaliatory termination. Or. Rev. Stat. § 659A.109. Aggrieved employees are entitled to a jury trial upon request, and, if successful, may obtain compensatory and punitive damages, and attorney fees. Or. Rev. Stat. § 659A.885. Because these remedies are adequate and

23 Opinion and Order

account for all relief that would be available in a wrongful discharge claim, and because the legislature has evinced its intent to preclude a wrongful discharge claim by making those remedies available, plaintiff's wrongful discharge claim is preempted. See also Galenbeck v. Newman & Newman, Inc., No. 02-6278-HO, WL 1088289 at *5 (D. Or., May 14, 2004); Robinson v. U.S. Bancorp, No. 99-1723-ST, WL 435468, *4 (D. Or., Mar. 17, 2000) (F & R adopted by Judge Jones on April 20, 2000) (holding same).

Intentional Infliction of Emotional Distress

In order to withstand summary judgment on the intentional infliction of emotional distress claim, plaintiff must show the existence of a genuine issue of material fact on each of three elements: (1) intent to commit (2) actions that "extraordinarily transgress[] the bounds of socially tolerable conduct" (3) and that caused severe emotional distress to plaintiff. Babick v. Or. Arena Corp., 40 P.3d 1059, 1063 (Or. 2001).

Whether a complaint sufficiently alleges conduct that constituted an extraordinary transgression of the bounds of socially tolerable conduct is a question of law. See id. at 1064. A defendant's conduct is sufficiently transgressive when it "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Christopherson v. Church of Scientology, 644 P.2d 577, 584  n.7 (Or. App.), rev. denied, 650 P.2d 928 (Or. 1982). "The defendant's conduct must be extremely outrageous, not merely rude, tyrannical, churlish, or mean." Santrizos v. Evergreen Federal Savings and Loan Ass'n., Civ. No. 06-886-PA, WL

24 Opinion and Order

283024, *3 (D. Or., Jan. 18, 2007).  Oregon case law sets a high threshold for outrageous conduct in employment contexts; "Oregon appellate courts have been very hesitant to impose liability for IIED claims in employment settings, even in the face of serious employer misconduct," Robinson v. U.S. Bancorp, Civ. No. 99-1723-ST, WL 435468, *8 (D. Or., Mar. 17, 2000).  Thus, subjecting employees to threats of termination, tantrums, insults, unreasonable demands, and discriminatory comments will not rise to actionable conduct unless the employer's actions are egregiously cruel.  See id. (citing cases).  Moreover, "[d]ischarge alone is not actionable."  Galenbeck v. Newman & Newman, Inc., No. 02-6278-HO, WL 1088289 at *8 (D. Or., May 14, 2004).

Plaintiff has not alleged any qualifying "outrageous" conduct. Plaintiff does not specify any particular instance of conduct by any agent of OfficeMax that rises to a level of unprofessionalism, let alone egregious conduct.  The record indicates that OfficeMax's Human Resources Coordinator acted professionally in her interactions with plaintiff.  Plaintiff appears to rest his argument instead on the assertion that loss of work during periods in which OfficeMax could not offer plaintiff work that met his medical restrictions caused plaintiff anxiety, depression, and sleeplessness.  Plaintiff's Response at 66.  That bare assertion fails to address the first two elements of the tort.  Accordingly, it is apparent that plaintiff cannot withstand OfficeMax's motion for summary judgment on this claim.


Reckless Infliction of Emotional Distress

Nor does plaintiff's reckless infliction of emotional distress

claim withstand summary judgment.  This court has held that Oregon courts do recognize the tort of reckless infliction of emotional distress.  Snead v. Metropolitan Property, 909 F. Supp. 775, 779 (D. Or. 1996), aff'd, 116 F.3d 486 (9th Cir. 1997) ("there is no cognizable claim for the reckless infliction of emotional distress under the laws of the State of Oregon").  Plaintiff, however, adduces Oregon appellate cases that suggest the tort may be cognizable in situations where a special relationship between the parties imposes a duty to safeguard against the effects of reckless conduct.  E.g., Hammond v. Central Lane Communications Center, 816 P.2d 593, 598 (Or. 1991) ("A plaintiff may recover for severe emotional distress without accompanying physical injury by showing recklessness or a reduced level of intent . . . when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself").  Even if such a claim were available, plaintiff has failed to describe any outrageous conduct by any agent of OfficeMax that, whether committed recklessly or intentionally, caused him harm.  Again, summary judgment in OfficeMax's favor is appropriate.

//
//
//
//
//
//
//

26 Opinion and Order

<u>CONCLUSION</u>

Boise Cascade L.L.C.'s Motion for Summary Judgment (#35) and Supplemental Motion for Summary Judgment (#127), and OfficeMax Incorporated's Motion for Summary Judgment (#40) are GRANTED. This action is DISMISSED.

IT IS SO ORDERED.

Dated this 27 day of July, 2007.

THOMAS M. COFFIN
United States Magistrate Judge

27 Opinion and Order